**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**GARY STEVEN KRIST,**
          **Petitioner,**

**vs.**                                        **5:09cv143/RS/MD**

**WARDEN IKE EICHENLAUB,**
          **Respondent.**

---

## REPORT AND RECOMMENDATION

Petitioner Gary Steven Krist filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, a memorandum and affidavit in support (doc. 1, 5, & 21).  Warden Eichenlaub has filed a respones (doc. 27) and petitioner has filed a rebuttal and affidavit (doc. 31 & 32).  He has also filed a motion for discovery and supporting memorandum (doc. 35 & 36), a "motion to object to Magistrate Judge's Denial of Motion to Compel discovery and/or for Scheduling Order" (doc. 37) and an emergency motion to expedite ruling.  (Doc. 38).

### Background

Petitioner Gary Steven Krist is currently serving a 65 month sentence imposed on January 18, 2007 in the Southern District of Alabana for conspiracy to import cocaine in violation of 21 U.S.C. § 963 and for bringing in and harboring aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(i) & (a)(1)(A)(v)(II).  He is scheduled for release via good conduct time on November 23, 2010.  (Doc. 27, declaration of Gary Sailor at 2).

The claims in the instant petition related to the Respondent's decision to deny petitioner drug abuse treatment to which he contends he is entitled under the law. Specifically, petitioner contends that he was denied drug abuse treatment, that the respondent abused his discretion in denying him placement in the Residential Re-entry Center ("RRC"), that this denial was an act of retaliation, and that this denial was in violation of a contract the BOP entered into with petitioner, in which it represented to him that he had a reasonable expectation of sentence reduction if he successfully completed the Residential Drug Abuse Treatment Program.[1] Petitioner also contends that the respondent improperly based his denial on an offense for which petitioner had been pardoned, that the denial of RRC placement is an unconstitutional ex post facto rule application, that petitioner was denied due process and equal protection, and that respondent's denial of RRC placement "nullified" the clear intent of the law. Petitioner seeks an order directing the respondent to place him in a halfway house so he can complete the Residential Drug Abuse Treatment Program. This case was filed pursuant to the prison mailbox rule[2] on April 15, 2009.

## Drug Treatment Programs within the Bureau of Prisons

The declaration of Gary Sailor, currently a Unit Manager at the Federal Correctional Institution Marianna, describes the Non-Residential Drug Treatment Program ("NRDAP") and the Residential Drug Abuse Treatment Program ("RDAP") are offered to inmates within the Bureau of Prisons. (Doc. 27, att. 1). The NRDAP is available to all eligible inmates at all institutions, and requires less of a time

---

1 These are the only grounds for relief acknowledged by the government in its response, although Grounds 5 through 8 are identified in the attachment pages to the petition.

2 *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule"); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (absent evidence to the contrary, court assumes that a pro se petition is delivered to prison authorities for mailing the date it was signed).

commitment from inmates than the RDAP, which is available only at certain institutions and has stricter eligibility requirements. The RDAP is comprised of three separate components: a unit-based residential program lasting a minimum of 500 hours, an institution transition phase, and a community transitional phase. The final phase lasts up to six months and takes place when the inmate is transferred to a Residential Re-entry Center ("RRC"), also known as a half-way house or Community Corrections Center ("CCC"). Inmates who are excluded from a community based program are not eligible for early release, while inmates who have completed all three components of the RDAP may be eligible for an early release incentive pursuant to 18 U.S.C. § 3621(e)(2)(B). (Doc. 27, att. 1 at ¶ 4).

Petitioner was determined to be provisionally eligible for early release under 18 U.S.C. § 3621(e) on October 11, 2007 and entered the 500-hour unit based residential program on December 15, 2008. (Doc. 27, att.1 at ¶ 5). On March 10, 2009, affiant Sailor evaluated petitioner to determine his eligibility for RRC placement and the duration of such placement. Such an evaluation is based on an assessment of an inmate's needs using the 5-factor review set forth in 18 U.S.C. § 3621(b).[3] (Doc. 27, att. 1 at ¶ 6). Inmates who pose a significant threat to the community through either their current offense or behavioral history "shall not ordinarily participate" in RRC programs. (BOP Program Statement 7310.04 at 10i, available at www.bop.gov).

---

3 In designating the place of a prisoner's imprisonment, the BOP considers:
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the sentence--
        (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
        (B) recommending a type of penal or correctional facility as appropriate; and
    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
18 U.S.C. § 3621(b).

One cited example of an inmate posing a threat to the community is one with a history of escape.[4]  (*Id.*)  The Program Statement also explains that:

> To determine whether an inmate poses a significant threat, a number of factors must be considered. The key consideration is public safety when assessing the inmate's proclivity for violence or escape against their placement needs.

(*Id.*).

Sailor states in his affidavit that petitioner was not considered for RRC placement because he is "a significant threat to the community" as evidenced by prior criminal conduct contained in petitioner's Pre-Sentence Investigation Report. Sailor identified the conduct at issue as including two escapes and a kidnaping offense.  One of these escapes took place during the summer of 1961 when petitioner was a juvenile (PSR ¶ 47),  and the second took place in 1965 when petitioner was 19 years old.  (PSR ¶51).  A third arrest for escape with an unknown disposition took place in 1966. (PSR ¶ 58).  The kidnaping offense took place in 1969 when petitioner was 23 years old.  (PSR ¶ 53).  With respect to the latter offense, petitioner was found guilty and sentenced to life in prison in 1969, was paroled in

---

4 The court disagrees with respondent's interpretation of the relevant provision, although notes that respondent's position is potentially more favorable to the petitioner.  Respondent cites the Program Statement as precluding inmates with a history of *repetitive* escapes.  However, a careful reading of the Program Statement suggests that it merely refers to a history of escape, rather than a history of repetitive escape.  The Program Statement specifically states:

> Examples are inmates with repeated, serious institution rule violations, a history of repetitive violence, escape, or association with violent or terrorist organizations.

Using the word "repetitive" as a modifier for "escape" would also require that it be used to modify the last portion of the clause and thus require "**repetitive** association with violent or terrorist organizations," surely an unintended result.  Additionally, the Program Statement also provides that:

> Ordinarily, inmates with a single incident of violence should not automatically be excluded from CCC placement.

This language underscores the fact that ***repetitive*** violence is basis for exclusion.  There is no such distinguishing reference to escape.

*Case No: 5:09cv143/RS/MD*

1979 and was pardoned by the State of Georgia in 1988.[5] Petitioner had no subsequent criminal history, and the PSR reflects that petitioner attended medical school and completed a medical residency in 1996, although he apparently did not work as a physician after that. Although there was a nearly 40 year gap in time between the petitioner's offense conduct and determination that the petitioner was a threat to the community, Sailor notes that the Case Management Coordinator, the Associate Warden of Programs and the institution Warden all concurred with his decision not to approve petitioner to the CCM staff for RRC placement. (Doc. 27, att. 1 at ¶ 8). Thereafter, on April 14, 2009, petitioner was deemed ineligible for early release based upon the denial of his RRC placement and his resulting inability to fulfill the community transitional services phase. (Doc. 27, Sailor declaration at ¶ 5).

## Exhaustion of Administrative Remedies

Prisoners must exhaust administrative remedies before habeas relief can be granted, including relief pursuant to § 2241. *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004); *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632, 634 (2nd Cir. 2001) (addressing § 2241 petition); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (addressing § 2241 petition); *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981) (discussing habeas petitions in general); *United States ex rel. Sanders v. Arnold*, 535 F.2d 848, 850-51 (3rd Cir. 1976) (same); *Willis v. Ciccone*, 506 F.2d 1011, 1014-15, n. 3 (8th Cir. 1974) (same). This requirement is jurisdictional. *Winck v. England,* 327 F.3d 1296, 1300 n.1 (11th Cir. 2003) (recognizing that although there is no statutory requirement that a federal inmate exhaust his administrative remedies prior to filing a § 2241 writ of habeas corpus, exhaustion is jurisdictional in the Eleventh Circuit); *Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992) (per curiam) (citing *United States v. Lucas*, 898 F.2d 1554, 1556 (11th Cir. 1990)

---

5 The Pardon, which is attached to petitioner's rebuttal (doc. 31) also reflects a 1973 conviction for "attempt to escape."

(requirement that prisoners exhaust administrative procedures prior to seeking relief in district court is jurisdictional)); *cf. Boz v. United States*, 248 F.3d 1299, 1300 (11th Cir. 2001) (per curiam) (Also jurisdictional is "[t]he general rule ... that a challenge to agency actions in the courts must occur after available administrative remedies have been pursued.") (internal quotation marks and citation omitted).

The Bureau of Prisons provides a multi-level administrative grievance procedure for most prisoner complaints. 28 C.F.R. § 542.10-542.16. Initially, prisoners must seek resolution of issues through informal grievances (BP-8). *Id.* at § 542.13(a). The deadline for completion of informal resolution and submission of a formal written request to the warden (BP-9) is 20 calendar days following the date on which the basis for the Request occurred. 28 C.F.R. § 542.14(a). If dissatisfied with the warden's response, an appeal may then be taken to the Regional Director using the BP-10 form within twenty days of the response. 28 C.F.R. § 542.15(a). Finally, within thirty days of the Regional Director's response, an inmate may appeal to the General Counsel for the BOP using the BP-11 form. *Id.* This is the final level of administrative appeals. Each of these steps is generally required to satisfy the exhaustion prerequisite. Furthermore, an inmate is required to exhaust administrative remedies before seeking habeas relief, rather than doing so while a petition is pending. See *Gonzalez*, 959 F.2d at 212; *Meagher v. Dugger*, 737 F.Supp. 641, 643 (S.D. Fla. 1990); *Keys v. U.S. Dept. Of Justice*, 136 Fed.Appx. 313 (11th Cir. 2005). However, in some circumstances courts have found that where the jurisdictional defect is cured during the pendency of the action, the court may proceed to review the merits of the claim. See, e.g., *Scott v. Singletary*, 38 F.3d 1547, 1550 n. 3 (11th Cir.1994) (concluding that district court's denial of habeas petitioner's motion for relief from judgment denying his habeas corpus petition cured any jurisdictional defect which might have existed when he filed motion with appellate court to recall mandate in prior decision affirming denial of habeas petition, but cautioning petitioner that "[s]imilar procedural machinations will, in the future, be

strictly scrutinized for compliance with basic jurisdictional norms."); *Meagher v. Dugger*, 737 F.Supp. 641, 643 (S.D.Fla.1990) (holding that administrative remedies must be exhausted prior to seeking judicial review, not merely prior to district court's decision on the merits, but construing petitioner's "Notice of Supplementary Facts," in which petitioner indicated that he had completed administrative remedy process during pendency of district court case, as motion to amend jurisdictional allegations in petition, and permitting amendment); *Redding v. Middlebrooks*, 2009 WL 369961 *2 (N.D. Fla. 2009) (citing *Scott* and *Meagher*).  This does not appear to be such a case.

Petitioner admitted in his initial memorandum that he had not exhausted his administrative remedies, and argued that he should be allowed to proceed with this action nonetheless.  (Doc. 5 at 3).  Before the Warden's response was filed, petitioner filed an affidavit in which he claimed that as of June 22, 2009, the date of his affidavit, he had exhausted his administrative remedies.  (Doc. 21, Krist affidavit at 2).  He then again argued in his rebuttal that post-filing exhaustion was adequate, (doc. 31 at 9), although he stated in the affidavit attached to his motion in support of rebuttal to respondent's answer (doc. 32) that "[a]t no point in the many levels of appeal did the BOP address my complaint about being deprived of statutorily mandated drug abused treatment or any of the other issues [he] raised in [his] BP9, BP9, BP10, BP11."  (Doc. 32, supporting affidavit at ¶ 29).  A closer look at the administrative remedies pursued by petitioner is warranted.

According to the declaration of Gary Sailor, petitioner Krist filed an administrative remedy at the regional level on April 30, 2009 requesting early release through RDAP and an RRC referral.  This request was rejected because it had been filed at the wrong level, and petitioner was directed to file his request at the institution level.  Instead, petitioner filed a remedy with the Office of General Counsel on May 21, 2009. This appeal was also rejected for having been filed at the wrong

level, and petitioner was again directed to file with the institution. (Doc. 27, declaration of Gary Sailor, ¶ 11).

Subsequently, on June 2, 2009, petitioner filed a BP-9 administrative remedy with the institution requesting review of his RRC referral. The institution denied his remedy/request. (Doc. 27, declaration of Gary Sailor, ¶ 12). Sailor notes that petitioner contends he originally filed a BP-9 at the institution level on or about April 6, 2009 ("April BP-9"). Sailor concedes that petitioner "may have indeed filed the April BP-9," but notes that the BOP has no record of this request being logged into its SENTRY database and the request was not given a tracking number. (See doc. 27, Sailor Declaration, exh. GS06). Absent any such records, it was not unreasonable for the BOP to reject the subsequently-filed BP-10 and BP-11 as procedurally improper. (Doc. 27, Sailor declaration, ¶ 13). Once the June BP-9 was rejected, Sailor states that petitioner should have filed another BP-10 and BP-11 to properly sequentially exhaust his administrative remedies. His failure to do so, states Sailor, means that petitioner has not completely exhausted his administrative remedies with respect to his RRC referral.

This court concurs that merely re-filing the BP-9 after the BP-10 and BP-11 were procedurally rejected did not complete the exhaustion cycle, and petitioner should have re-filed the BP-10 and BP-11. While it may seem nonsensical at first blush to require the petitioner to re-submit a BP-10 and a BP-11 after having done so, the fact of the matter is, the only BP-10 and BP-11 that were submitted were rejected on procedural grounds, without an examination of their merits, a fact admitted by petitioner. (Doc. 32, Krist affidavit at 5). Thus, in order for there to be complete and proper exhaustion of the merits of petitioner's claim, he should have filed appeals after the BP-9 was considered on its merits. This comports with the twofold purpose of administrative exhaustion identified by the Supreme Court in

***Woodford v. Ngo,*** **548 U.S. 81, 126 S.Ct. 2378, 2385, 165 L.Ed.2d 368 (2006).[6] First, exhaustion protects "administrative agency authority," giving agencies the opportunity to correct their own mistakes before being haled into federal court. *Woodford*, 126 S.Ct. at 2385. Second, it promotes efficiency, in that claims can generally be resolved more quickly and economically in proceedings before an agency than in federal court. *Id.* The purpose of the administrative exhaustion requirement was not fulfilled in this case where petitioner himself asserts that the BOP has not addressed his claims on their merits on every level. (Doc. 32, Krist affidavit at 5).**

**Petitioner's suggestion that no merits review took place on any level is not entirely accurate. Among the attachments appended to the first affidavit he file are two documents that appear to be institutional responses to either BP-8 or BP-9 requests. (Doc. 21, exh. to affidavit). The document labeled as affidavit attachment #2 is a "Part B response" bearing Case No. 541101-F1, signed by Warden Eichenlaub and dated June 8, 2009. It provides in pertinent part:**

> **This is in response to your Request for Administrative Remedy receipted June 2, 2009. Specifically, you request to be reconsidered for Residential Reentry Center placements.**
>
> **According to Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedures, there are limitations on eligibility for all CCC referrals. Therefore, the Warden can exclude an inmate from participation in a Community Corrections Center.**
>
> **Your central file was reviewed and a determination was made that your criminal history poses a threat to the public. Therefore, your request to be reconsidered for Residential Reentry Center placement is denied.**
>
> **Based on this information, your Request for Administrative Remedy is denied.**

---

6 Although *Woodford* dealt with an action arising under 42 U.S.C. § 1983, the policy reasons favoring exhaustion are equally applicable in this case.

(Doc. 21, affidavit attachment 2). Also appended to the affidavit is a second "Part B response." (Doc. 21, affidavit attachment 16). This document has a space for Warden Eichenlaub's signature and a date, but is neither signed nor dated, and it does not include a case number. Petitioner characterizes this document as a response to the BP-8 he filed on March 17, 2009, and states that he did not receive it until June 19, 2009. The document itself, however, states that it is a response to his Request for Administrative Remedy dated April 6, 2009. It notes that the Warden denied petitioner's CCC placement based on his prior criminal history. It further provides in relevant part:

> P.S. 7310.04 - Community Corrections Center Utilization and Transfer Procedures - provides guidance and criteria on CCC referrals. Your denial memo reflected that you posed a significant threat to the community based on your prior history of escape and kidnaping. P.S. 7310.04 states that an inmate who has a history of escape should be carefully reviewed and consideration should be given regarding the suitability of participation and the length of placement (pg. 8). It further states that inmates who fall in certain categories shall not ordinarily participate in CCC programs. One of these categories is "Inmates who pose a significant threat to the community." These are considered to be inmates whose current offense or behavioral history suggests a substantial or continuing threat to the community. An example cited in policy is "inmates with an escape history." Another key consideration in determining public safety is assessing the inmate's proclivity for violence or escape against their placement needs (pg. 11). It was determined in this instance that your past history of violence and escape posed a continued and significant threat to the community.
>
> In regards to your statements regarding you being in a "contract" with the RDAP program, you state that part of that contract is that they promise to refer you to a Community Corrections Center if you successfully complete the drug treatment program. While you are upholding your end of the agreement by successfully participating in the program, with all indications that you will successfully complete the program, the RDAP program, along with your Unit Team, has upheld their end of the agreement by making the referral as promised. However, P.S. 7310.04 states that "The Warden is the final decision-making authority for all CCC referrals the unit team recommends." (Pg. 12).

**Based on the above information, the relief you seek is denied.**

**(Doc. 21, affidavit attachment 16). As noted above, petitioner contends that he received this unsigned, undated document on or about June 16, 2009. He does not contend, however, that he ever appealed <u>this</u> response. Therefore, neither the regional nor national office of the BOP was afforded the opportunity to consider the petitioner's argument that convictions that were at least 40 years old should not have been used to deny him RRC placement, and the purposes of the administrative exhaustion requirement as identified in *Woodford* were thwarted. The instant petition for writ of habeas corpus should therefore be denied due to petitioner's failure to have exhausted his administrative remedies.**

**The court recognizes, and sympathizes with, the petitioner's position that he has attempted to follow the proper channels in pursuing his claim, and his frustration with the passage of the date when he might otherwise have been referred to RRC. Assuming for sake of argument that petitioner did file the April BP-9, but that it was not considered due to some sort of administrative error, the question remains as to what was the proper course of action, ie whether petitioner could treat the lack of response as a denial, or whether he was obligated to refile the BP-9 and then follow proper channels of appeal to fully exhaust his administrative remedies. This court is inclined to find that refiling the BP-9 before pursuing administrative appeals and then sequentially following those steps would have been more appropriate. Otherwise, abuse or attempted circumvention of the administrative process would be more likely to ensue. See *Hiles v. Zuercher*, 2009 WL 499099 *3 (E.D.Ky. 2009) (petitioner "was not excused from compliance with the BP-9 step, simply because his first BP-9 was lost due to administrative error).**

**Because of the court's recommendation with respect to the habeas petition, petitioner's pending motions, with the exception of his motion to expedite ruling, will be denied.**

**Accordingly it is ORDERED:**

**Petitioner's motion for discovery (doc. 35) is DENIED.**

**Petitioner's motion to object to Magistrate Judge's Denial of Motion to Compel Discovery and/or for Scheduling Order (doc. 37) is DENIED.**

**Petitioner's emergency motion to expedite ruling (doc. 38) is GRANTED to the extent this recommendation has issued.**

**And it is respectfully RECOMMENDED:**

**That petitioner's petition for writ of habeas corpus under § 2241 (doc. 1) be denied without prejudice due to his failure to exhaust his administrative remedies.**

**At Pensacola, Florida this 29th day of October, 2009.**

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**